*246
 
 Pearson, J.
 

 An administrator has the right to sell the notes of his intestate. The purchaser is under no legal obligation to see to the application of the purchase money. But although the exigencies of estates sometimes make it expedient to sell notes, it is rarely ever the case, and such dealings are looked upon with suspicion, and, when permitted to stand, it is not because Courts are satisfied, that the parties have acted honestly, but because their dishonesty cannot be proven. As an administrator has the right of property, and, of course, the right to sell, the mere fact of selling is no breach of trust, and a purchaser cannot be liable without actual notice, that the administrator intended to use the funds for his own purposes. The case of most frequent occurrence is, when the purchaser receives the funds in satisfaction of an individual debt of the administrator, so as not merely to have notice, but to be a participator in the guilt. This latter circumstance, however, is not necessary. It is sufficient, if the purchaser has actual notice of a dishonest intent and purpose to mis-apply the funds.
 
 Tyrrell
 
 v. Morris, 1 Dev.
 
 &
 
 Bat. Eq. 559.
 
 Gray
 
 v.
 
 Armistead,
 
 decided at the last June term. The defendant, Simpson, swears, that he purchased the note of Rhinehart, and paid for it in cash, deducting 15 per cent. There is no proof that he had ac„ tual notice of a particular dishonest intent on the part of the administrator, and, although the fact, that an administrator proposes to sell a
 
 good sale note
 
 at a discount of 15 per cent, will most usually put honest dealers upon inquiry, this constructive notice is not sufficient. In this a purchaser from an administrator stands on higher ground than a purchaser from a trustee, who has no right to sell, and when the mere fact of selling is a breach of trust. For these reasons the plaintiff cannot have relief, as to the amount of the note of Rhinehart. Simpson does not allege, that he is a purchaser of the other three notes, but merely makes the general assertion, that he is unable
 
 *247
 
 to recollect how, when or where he got them from Fullenwider. As he does not allege himself to be a purchaser he must be looked upon as a volunteer, holding in trust for the persons entitled, and the plaintiffs are entitled to a decree against him for the amount of those three notes and interest with costs. There is no proof of the allegation, that John Bradshaw, one of the plaintiffs, who is a co-administrator with Fullenwider, was privy and consented to the mis-application of the funds, nor is there any suggestion, that the sum realized from the deed of trust, made by Fullenwider, reduced the amount of his defalcation, so that it does not exceed the amount of the notes for which Simpson is liable. If the amount has been reduced below the amount of the notes and interest, Simpson can have the benefit of that fact, upon taking the account. But there is proof that some of the distributees have received from John Bradshaw, the co-administrator, a part or the whole of their shares of the estate. This is no ground of defence for Simpson, for the plaintiff, John Bradshaw, has an equity to be substituted and receive the amounts so paid by him ; but it may render it necessary for the plaintiffs to have an account among themselves, so as to ascertain the sums they are respectively < ntitled to, out of the amount decreed against Simpson. In the mean time the fund must be paid into the master’s office,'and an execution will issue therefor in the name of John Bradshaw. The defendant, Ramsour, is not fixed with notice; he swears he purchased the notes from Simpson fora full and fair consideration, after Simpson obtained them from Fullenwider. The bill must be dismissed as to him with costs. The defendant, Fullenwider, is admitted to be insolvent. He is primarily liable, and either party may hereafter move for a decree against him.
 

 Per Curiam.
 

 Decreed accordingly.